51 CCPA

**Application of Rudolph BIRMANN.**

**Patent Appeal No. 7156.**

United States Court of Customs and Patent Appeals.

April 9, 1964.

Busser, Smith & Harding, Philadelphia, Pa. (George A. Smith, Philadelphia, Pa., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (S. Wm. Cochran, Washington, D. C., of counsel), for Comr. of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

MARTIN, Judge.

This appeal is from the decision of the Board of Appeals of the Patent Office affirming the examiner's rejection of claims 11 through 18, the only remaining claims in appellant's application serial No. 530,966, filed August 29, 1955, for "Turbocharger Involving A Centripetal Turbine."

The application relates to turbochargers for internal combustion engines and discloses the combination of an internal combustion engine and a turbocharger, the latter comprising a turbine driven by exhaust gases received from the engine and a compressor driven by the turbine to

supply compressed air to the engine. Appellant states that since the discharge of exhaust gases from a reciprocating internal combustion engine is intermittent, problems have arisen in securing proper driving conditions for a turbine utilizing these gases. Appellant's invention is directed to an arrangement for providing smooth and efficient operation of the turbine despite the intermittent flow of the exhaust gases driving the turbine.

An axial section through a turbocharger, in accordance with appellant's invention, is shown in Fig. 1 of the drawing reproduced below:

FIG 1

The device includes compressor blades 4 and turbine blades 6 mounted on a single rotor hub 2. Air entering through inlet portion 10 of the compressor housing is compressed by blades 4 and flows from outlet 19 to the engine cylinders. Appellant drives the compressor by a centripetal turbine [1] having a vaneless chamber

1. The application refers to centripetal turbines as "those involving a substantial radial inward component of flow of gases through the turbine passages," although it

36 disposed around and communicating freely with rotor blades 6. Exhaust gases from the engine, flowing from separate cylinders of the engine or from separate manifolds for groups of engine cylinders, pass through a pair of inlets one of which is designated 20 and past guide vanes including that shown at 32 into the chamber 36. The application states that the flow of the exhaust gases is constrained to spiral inwardly by reason of the introduction of mass flow at the periphery of that chamber and "withdrawal of gases at the periphery of the turbine blading and in this spiral flow, unimpeded by any guide vanes, a transition occurs which involves not only smoothing out of the pulsations at the periphery but a transformation as well to the vortex flow."[2] After passing through the blades the exhaust gas discharges through diffuser 42.

The form of the invention shown in Figure 1 is described as operated by the exhaust gases from a number of cylinders exceeding two, for example, six cylinders. Also disclosed is an embodiment, described as particularly advantageous in case of engines of the two-cycle type, wherein the turbocharger is driven by the exhaust gases from two adjacent cylinders which have non-overlapping exhaust phases and are charged by the turbocharger.

Claim 16 is representative and reads:

"In combination with a multicylinder internal combustion engine, a turbocharger comprising a compressor arranged to supply air to said engine and a turbine arranged to receive driving exhaust gases from said engine and to drive said compressor, said turbine comprising a rotor of centripetal type provided with blades providing passages disposed to receive gases having a substantial radially inward component of motion, and means defining an annular chamber surrounding said rotor and having free communication with said rotor about the entire circumference thereof, said means being vaneless and providing unobstructed flow of gases to said rotor, and means providing nozzles spaced around the periphery of said chamber for directing said driving gases directly from the cylinders of said engine approximately tangentially into the outermost portions of said chamber, said defined chamber having substantial radial extent sufficient to provide for conversion of pulsating flow at its periphery into relatively smooth vortex flow in the region of entry of the gases into the rotor passages."

Claims 11, 12, 17 and 18 are dependent on claim 16 and claim 13 is dependent on claim 11. Claims 14 and 15 are specific to the combination of the turbocharger with a two-cycle engine having a pair of cylinders operating with non-overlapping exhaust phases.

The references relied on are:

| | | |
|---|---|---|
| Thomas | 1,152,361 | Aug. 31, 1915 |
| Tartrais | 1,354,786 | Oct. 5, 1920 |
| Chilton | 2,607,189 | Aug. 19, 1952 |
| Canadian Patent | 474,916 | July 3, 1951 |
| German Patent | 684,332 | Nov. 25, 1939 |
| Austrian Patent | 168,357 | May 25, 1951 |

---

appears from the record that the term is applicable to hydraulic turbines as well as gas turbines. Centripetal turbines distinguish from axial flow turbines which do not have such a radial inward component of flow.

2. The record indicates that the term "vortex flow" applies to a flow of fluid which is constrained to spiral inwardly with the product of circumferential velocity and radius remaining constant. Thus, the flow has an increasing circumferential velocity as it spirals inwardly.

The German patent discloses the combination of a multi-cylinder internal combustion engine with a turbocharger which supplies air thereto. The turbocharger comprises a compressor supplying air to the engine and a turbine of the axial flow type which receives and is driven by gases flowing from the engine manifold and which drives the compressor rotor.

The Canadian patent discloses a centripetal turbine wherein the rotor is disposed within a vane-free transition space. It is stated that the complex vane guide structure, usually provided in centripetal turbines, tends to introduce disturbance and turbulence in the flow entering the rotor while a vane-free casing provides simplicity of construction, operation and maintenance, and permits high casing velocities. The patent states that the invention relates to "hydraulic reaction turbines" and refers to the turbine as operated by "fluid" and by "mixed liquid and vapor."

The Chilton patent shows a multi-cylinder internal combustion engine provided with a series of turbines each of which is driven by the exhaust gases of several cylinders. The exhaust gases are supplied to nozzle boxes disposed circumferentially around the turbine.

The Thomas patent shows a turbine having an axis parallel to the axis of the cylinders of an internal combustion engine, the exhaust gases from which engine drive the turbine.

The Tartrais patent relates to an engine with exhaust ports discharging into an annular exhaust belt surrounding its cylinder.

The Austrian patent discloses a turbocharger employing a centripetal type of turbine. The turbine comprises a spiral inlet duct, an annular nozzle chamber, a turbine rotor and a diffuser-like outlet duct.

The examiner rejected claims 11, 12, 13, 16 and 17 on the German patent in view of the Canadian patent taken further with Chilton. He stated that it would be "devoid of invention," apparently meaning obvious under 35 U.S.C. § 103, to employ a turbine of the centripetal type shown by the Canadian patent in place of the axial flow type in the German patent and to provide a plurality of nozzles around the periphery of the annular chamber of the turbine of the Canadian patent. He further stated that the Austrian patent "shows that there is nothing new about applicant's centripetal type of turbine in an exhaust gas driven turbosupercharger, the very same environment as used by applicant."

The rejections of claims 14, 15 and 18 involve the same patents as applied against the aforementioned claims with further reference to Thomas and Tartrais.

In affirming the examiner's rejection the board stated:

"* * * Whether or not a turbine as shown in the Canadian patent may be substituted for the axial flow turbine in the German patent will depend on whether the combination of a centripetal turbine and a charger or compressor is taught by the prior art. The Austrian patent shows and appellant admits in his Reply Brief that there is no novelty in such a combination. We consider the Canadian patent as a part of the turbine art and thus it is not from a remote art."

On reconsideration, it further stated:

"* * * Appellant admits on page 1, third paragraph of the Reply Brief filed May 24, 1960 and the Austrian patent shows that it is old to employ a centripetal type of turbine for driving a supercharger. All turbines whether powered by gas or liquid are classified in the same class in the Office. It would be obvious, therefore, to employ the turbine of the Canadian patent in a turbocharger not necessarily for smoothing pulsations but to avoid turbulence

as taught in the Canadian patent. * * * "

Appellant notes that the rejection of all the claims depends on the Canadian patent and the single basic issue here is whether that patent can properly be combined with the other references to show that the claimed invention would have been obvious to a person having ordinary skill in the art to which the claimed subject matter pertains. In support of the position that the claimed subject matter is not obvious, he argues that his invention solved a problem in the turbocharger art derived from "two unavoidable premises" as follows:

"(a) that discharge of exhaust gas from internal combustion engines is intermittent; and

"(b) that gas turbines operate only very inefficiently unless the delivery of gas to their rotating blades is quite uniform."

The following sketch, submitted by appellant with a request for reconsideration of the board's decision, is referred to as diagramming his solution to the problem:

Fig. I

Concerning the sketch he states:

" * * * A pair of passages A and A′ receive gas from an internal combustion engine and deliver the gas through the nozzle arrangements at B and B′ to the annular housing C within which the impeller D rotates. Pulsating flow is indicated by the stippled and unstippled regions, in which the stippled regions may be considered as those of high pressure and the unstippled regions as those of low pressure. Pulses $P_1$ and $P_2$ are shown entering from the conduit A and similar pulses are shown entering the conduit A′. It is well known that if a flow is constrained to spiral inwardly the laws of momentum require velocities to occur in a fashion characteristic of 'vortex' flow; i. e., the product of circumferential velocity and radius is constant. We claim no novelty for this law; we judge it has probably been known for the past hundred years and is expressed in the equation given at the bottom of column 2 of the Canadian patent.

"Because of this law, applicant's flow as it spirals inwardly has a rapidly increasing circumferential velocity.

"What applicant conceived, and what we submit is not even hinted at in the prior art, is that this 'vortex' law could be used very effectively in smoothing pulsations. Figure I gives a diagrammatic visualization of what occurs.

"Following the spiral from the inlet A along the line M containing the arrows, it will first be noted that the pulses start elongating in the direction of flow. This is due to the continuously increasing circumferential velocity.

"But the convolutions of flow from the two conduits A and A' alternate, as illustrated, and are not separated by solid boundaries. Accordingly where they may be said to meet, the velocities are quite different and viscous drag occurs. The boundaries thus lose distinctness, and gas from one flow region is accelerated into an inner flow region and decelerated into an outer flow region. Looked at from another standpoint, the convolutions produce drag on each other and become intermixed with pressure variations toward a mean pressure. Because of the relative differences in velocities, the pressure regions of the adjacent convolutions do not travel together, but continuous change toward an average condition takes place. Carried out to a sufficient linear extent as by at least one full turn of the spiral, the whole flow becomes quite uniform as to both pressure and velocity, and the pulses effectively disappear so that uniform flow is provided at the inlet to the turbine blades. This action is aided also by the fact that high and low pressure regions cannot exist for long adjacent to each other, and given time a mean uniform pressure results."

Appellant points out that the Canadian patent is not concerned with smoothing out pulsations in the fluid flow into the turbine. He states that, instead, the fluid flow into the turbine is entirely smooth and the problem solved is that of eliminating turbulence produced after entry by the relative movement of the rotary blades and the stationary vanes, which problem the patent solves by eliminating the vanes and with them the cause of the turbulence. Appellant contends that one seeking to solve his problem would not look to the hydraulic turbine art where the input flow would be expected to be free of the pulsations.

It is also emphasized by appellant that his invention requires a plurality of input nozzles. Thus he contends:

"It will be noted that each of the independent claims, and hence each of the dependent claims as well, refers to 'nozzles' in the plural for directing the driving gases approximately tangentially into the outermost portions of the annular chamber. It is only when nozzles are provided in this multiple fashion that the described action will occur. This limitation is of major significance and contrasts with the Canadian patent in which only a single inlet nozzle is provided and with the Austrian patent in which no nozzle is provided."

The basic issue, which is determinative as to all claims if decided favorably to appellant, lies in the question of obviousness of the substitution of a vaneless centripetal turbine of the type shown in the Canadian patent in place of the turbine of the axial flow type used in the turbocharger of the German patent.

We do not think the references suggest that substitution be made to provide the subject matter of the claims. The board's reasoning is that it would be obvious to employ the vane-free turbine of the Canadian patent in the turbocharger of the German patent "not necessarily for smoothing pulsations but to avoid turbulence as taught in the Canadian patent." However, the teaching with respect to the elimination of turbulence must be

considered in the light of the environment disclosed in the Canadian patent, i. e., drive by hydraulic fluid which smoothly enters the casing. It is not taught therein that the structure would provide such advantage in a turbine to be driven by pulsating gas flow as to merit its use therein.

Moreover, the record does not appear to refute the contention that the smoothing out of pulsations which appellant describes results only when a plurality of "nozzles" are provided for directing the driving gases "approximately tangentially into the outermost portions of the annular chamber," as required by the claims. The fact that the Canadian patent employs only a single input nozzle further emphasizes the lack of any suggestion therein that a vane-free centripetal turbine of that patent can be substituted in the German patent in such a manner as to provide the claimed construction with its plurality of nozzles.

The examiner referred to the German patent and to Chilton as teaching the use of a plurality of nozzles in substituting the turbine of the Canadian patent in the former. However, neither of the first two patents employs a centripetal turbine and it is thus not seen that either would suggest modifying the turbine of the Canadian patent by providing a plurality of nozzles as defined in the claims. Indeed, the board did not place any specific reliance on Chilton.

Although the board referred to the Austrian patent as showing it is old to employ a centripetal type turbine for driving a turbocharger, it did not rely on that patent as disclosing the vane-free construction employed by appellant. We do not find the Austrian patent to suggest that the turbine of the German patent be changed to the particular contemplated construction of the Canadian patent and the latter modified to include a plurality of nozzles to feed the turbine with exhaust gases.

For the foregoing reasons the decision of the board is reversed.

Reversed.